Nos. 25-1603 & 25-1659
25-1655 & 25-1657

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

RONALD L. SCHROEDER, et al.

and

NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, et al.,

*Plaintiffs-Appellants-Cross-Appellees,*

v.

MARIO TRETO, JR.,

*Defendant-Appellee-Cross-Appellant.*

On Appeal from the United States District Court
for the Northern District of Illinois
Case Nos. 1:17-cv-04663 & 3:16-cv-50310

## RESPONSE AND REPLY BRIEF OF APPELLANTS

Thomas G. Olp
Patrick T. Gillen
THOMAS MORE SOCIETY
309 W. Washington, Suite 1250
Chicago, IL 60606
(312) 782-1680
tolp@thomasmoresociety.org
pgillen@thomasmoresociety.org

*Counsel for Appellant-Cross-Appellee*
*Ronald L. Schroeder,*
*et al.*

Erin M. Hawley
John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
ehawley@ADFlegal.org
jbursch@ADFlegal.org

James A. Campbell
Erik C. Baptist
Daniel J. Grabowski
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
jcampbell@ADFlegal.org
ebaptist@ADFlegal.org
dgrabowski@ADFlegal.org

Kevin H. Theriot
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
ktheriot@ADFlegal.org

*Counsel for Appellants-Cross-Appellees
National Institute of Family & Life Advocates, et al.*

# TABLE OF CONTENTS

Table of Authorities ..................................................................................... iii

Introduction ................................................................................................... 1

Jurisdictional Statement ............................................................................... 2

Statement of the Case ................................................................................... 2

Summary of the Argument ............................................................................ 3

Argument ....................................................................................................... 4

I.    The Benefits-Discussion Requirement triggers strict scrutiny under
      the Free Speech Clause. ...................................................................... 5

      A.    The Benefits-Discussion Requirement regulates speech. ...................... 6

      B.    The Benefits-Discussion Requirement is content and viewpoint
            based. ................................................................................................ 6

      C.    The State fails to show that the Benefit-Discussion Requirement
            is content neutral. ............................................................................. 8

      D.    The Benefits-Discussion Requirement regulates speech as
            speech, not speech incidental to conduct. ........................................ 10

      E.    The State cannot compel speech as part of regulating the
            general practice of medicine. .......................................................... 12

II.   The Referral Requirement triggers strict scrutiny under the Free
      Speech Clause. ..................................................................................... 15

      A.    The Referral Requirement regulates speech. ..................................... 15

      B.    The Referral Requirement is content and viewpoint based. ............... 18

      C.    The Referral Requirement regulates speech as speech, not
            speech incidental to conduct. .......................................................... 19

III.  Both requirements fail strict and intermediate scrutiny. ...................... 21

      A.    The State has not satisfied strict scrutiny. ...................................... 21

      B.    The State has not satisfied intermediate scrutiny. ............................ 23

IV.     Both requirements also violate the Free Exercise Clause. .............................. 27

V.      Both requirements' constitutional violations warrant facial relief. ............... 28

Conclusion ............................................................................................................... 29

Certificate of Compliance ........................................................................................ 31

Certificate of Service ............................................................................................... 32

# TABLE OF AUTHORITIES

**Cases**

*Agency for International Development v. Alliance for Open Society International, Inc.,*
570 U.S. 205 (2013) ............................................................ 4

*American Beverage Association v. City & County of San Francisco,*
916 F.3d 749 (9th Cir. 2019) ............................................ 7

*Bartnicki v. Vopper,*
532 U.S. 514 (2001) ................................................. 16, 17

*Brandt ex rel. Brandt v. Griffin,*
147 F.4th 867 (8th Cir. 2025) ......................................... 16

*Brokamp v. James,*
66 F.4th 374 (2d Cir. 2023) ............................................ 10

*Brown v. Entertainment Merchants Association,*
564 U.S. 786 (2011) ........................................................ 21

*City of Austin v. Reagan National Advertising of Austin, LLC,*
596 U.S. 61 (2022) ............................................................ 6

*City of Erie v. Pap's A.M.,*
529 U.S. 277 (2000) ........................................................ 25

*City of Renton v. Playtime Theatres, Inc.,*
475 U.S. 41 (1986) .......................................................... 25

*Cohen v. California,*
403 U.S. 15 (1971) ................................................... passim

*Del Castillo v. Secretary, Florida Department of Health,*
26 F.4th 1214 (11th Cir. 2022) ....................................... 14

*Doe v. City of Lafayette,*
377 F.3d 757 (7th Cir. 2004) .......................................... 17

*Doe v. Rokita,*
54 F.4th 518 (7th Cir. 2022) ..................................... 11, 12

*Free Speech Coalition, Inc. v. Paxton,*
606 U.S. 461 (2025) ............................... 9, 21, 23, 24

*Fulton v. City of Philadelphia,*
    593 U.S. 522 (2021) ........................................................ 27

*Giboney v. Empire Storage & Ice Co.,*
    336 U.S. 490 (1949) ........................................................ 16

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ........................................................ 27

*Heffron v. International Society for Krishna Consciousness, Inc.,*
    452 U.S. 640 (1981) ........................................................ 10

*Hodgkins ex rel. Hodgkins v. Peterson,*
    355 F.3d 1048 (7th Cir. 2004) ....................................... 10

*K.C. v. Individual Members of Medical Licensing Board of Indiana,*
    121 F.4th 604 (7th Cir. 2024) ........................................ 16

*Kennedy v. Bremerton School District,*
    597 U.S. 507 (2022) ........................................................ 28

*King v. Governor of New Jersey,*
    767 F.3d 216 (3d Cir. 2014) ............................................. 6

*Knowlton v. City of Wauwatosa,*
    119 F.4th 507 (7th Cir. 2024) ........................................ 10

*MacDonald v. City of Chicago,*
    243 F.3d 1021 (7th Cir. 2001) ....................................... 27

*Mahmoud v. Taylor,*
    606 U.S. 522 (2025) .......................................................... 4

*McCullen v. Coakley,*
    573 U.S. 464 (2014) ........................................................ 10

*Moody v. NetChoice, LLC,*
    603 U.S. 707 (2024) ........................................................ 28

*National Institute of Family & Life Advocates v. Becerra,*
    585 U.S. 755 (2018) ................................................. passim

*Nicodemus v. City of South Bend,*
    137 F.4th 654 (7th Cir. 2025) ........................................ 10

*Otto v. City of Boca Raton,*
    981 F.3d 854 (11th Cir. 2020) ............................. 6, 15, 16

*Patriotic Veterans, Inc. v. Zoeller,*
    845 F.3d 303 (7th Cir. 2017) ........................................................... 10

*Pharmaceutical Research & Manufacturers of America v. Stolfi,*
    153 F.4th 795 (9th Cir. 2025) ............................................................ 7

*Planned Parenthood of Southeastern Pennsylvania v. Casey,*
    505 U.S. 833 (1992) ................................................................. 11, 12

*R J Reynolds Tobacco Co. v. FDA,*
    96 F.4th 863 (5th Cir. 2024) .......................................................... 6, 18

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) ..................................................................... 16

*Richwine v. Matuszak,*
    148 F.4th 942 (7th Cir. 2025) ......................................................... 24

*Riley v. National Federation of the Blind North Carolina, Inc.,*
    487 U.S. 781 (1988) ..................................................................... 13

*Rust v. Sullivan,*
    500 U.S. 173 (1991) ..................................................................... 17

*Simon & Schuster, Inc. v. Members of New York State Crime Victims Board,*
    502 U.S. 105 (1991) ..................................................................... 28

*Snyder v. Phelps,*
    562 U.S. 443 (2011) ..................................................................... 21

*Tagami v. City of Chicago,*
    875 F.3d 375 (7th Cir. 2017) .......................................................... 17

*Telco Communications, Inc. v. Carbaugh,*
    885 F.2d 1225 (4th Cir. 1989) ......................................................... 27

*Texas v. Johnson,*
    491 U.S. 397 (1989) ................................................................. 16, 17

*The Bail Project, Inc. v. Commissioner, Indiana Department of Insurance,*
    76 F.4th 569 (7th Cir. 2023) .......................................................... 17

*TikTok Inc. v. Garland,*
    604 U.S. 56 (2025) ................................................................... 24, 26

*Tingley v. Ferguson,*
    47 F.4th 1055 (9th Cir. 2022) ......................................................... 10

*United States v. Playboy Entertainment Group, Inc.*,
   529 U.S. 803 (2000) .......................................................... 27

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) .......................................................... 10

*Wollschlaeger v. Governor, Florida*,
   848 F.3d 1293 (11th Cir. 2017) ................................. 20, 25

*Wooley v. Maynard*,
   430 U.S. 705 (1977) .......................................................... 14

## **Statutes**

28 U.S.C. § 1291 .................................................................... 2

745 Ill. Comp. Stat. 70/6 ..................................................... 22

745 Ill. Comp. Stat. 70/6.1 ........................................ passim

Ind. Code § 16-34-2-1.1 ...................................................... 11

## **Other Authorities**

Ill. H. Procs., 99th Gen. Assemb. (May 25, 2016) ...................... 26

# INTRODUCTION

This case is all but the mirror image of *National Institute of Family & Life Advocates v. Becerra* (*NIFLA*), 585 U.S. 755 (2018). Nothing the State says can change that. The State cannot impose an unconstitutional condition compelling the Pregnancy Centers to speak a message that they disagree with. Yet that is exactly what the Benefits-Discussion Requirement and the Referral Requirement do. Both are impermissible content-based regulations of speech—not regulations of conduct incidentally burdening speech.

The Benefits-Discussion Requirement forces pro-life medical providers to speak about abortion and its benefits, despite their objections to that message. And they must do so outside the context of performing a procedure or treatment. There is no conduct apart from the speech being regulated. The requirement regulates speech as speech. That is the exact situation as in *NIFLA*.

So too for the Referral Requirement. The Pregnancy Centers, which cannot transfer patients, must either refer a pregnant woman to an abortion provider or provide her information about such providers. Both options are inescapably speech. Again, there is no conduct—only the speech being regulated. So *NIFLA* controls. The State cannot force the Pregnancy Centers to speak a message supporting "the very practice" they "are devoted to opposing." *NIFLA*, 585 U.S. at 766. That is compelled speech—of the worst kind.

## JURISDICTIONAL STATEMENT

The State claims that the Pregnancy Centers' jurisdictional statement in its opening brief "is not complete and correct." State Br. 1. But it's unclear how. The best the Pregnancy Centers can tell is that the State half-heartedly questions the Court's jurisdiction over just the *Schroeder* case, Nos. 25-1603, 25-1659. But the district court entered final judgment in that case, granting the injunction against the Benefits-Discussion Requirement and denying it as to the Referral Requirement. *See* Rule 58 J. Order, No. 1:17-cv-4663, Dkt. No. 257. And as the State notes, the district court expressly "denie[d] all other relief." *Id.* That's a final judgment, which this Court has jurisdiction over under 28 U.S.C. § 1291.

## STATEMENT OF THE CASE

The Pregnancy Centers stand by the statement of the case in their opening brief. Yet one factual disagreement deserves highlighting: The State errs in its suppositions about the Pregnancy Centers' mission. It suggests that their only purpose is to convince pregnant women "to carry their pregnancies to term." State Br. 9. It thinks that all the services they provide are simply "to discourage patients from having abortions." *Id.* at 11.

That could not be more wrong. Of course, the Pregnancy Centers want to discourage abortions and encourage births. But that is far from their *only* purpose. Their overarching purpose is to help women and their babies. That's why they provide material support. SA-4. That's why they offer counseling and help *after* abortion. SA-88. And that's why they advocate against abortion—because they believe it offers no benefits to a woman and ends a baby's life. SA-3, 5; RSA-10.

## SUMMARY OF THE ARGUMENT

*NIFLA* controls this case. The Benefits-Discussion Requirement regulates speech based on its content. The Pregnancy Centers must speak a particular message dictated by the State. They must discuss elective abortion as a legal option and extol its benefits, despite believing it has no benefits. The compelled speech necessarily draws content-based lines. Worse, those lines are viewpoint based because the message is pro-abortion. So strict scrutiny applies, and the State cannot clear that high bar (just as it cannot clear intermediate scrutiny).

The State says that the Benefits-Discussion Requirement regulates conduct and only incidentally burdens speech. That's wrong. The State can point to no conduct separate from the compelled speech. Discussing abortion and its benefits is not the byproduct of performing some other action. Just as in *NIFLA*, there is no conduct alongside the speech, so speech-incidental-to-conduct principles do not apply.

The same goes for the Referral Requirement. That requirement also draws content-based lines. The Pregnancy Centers must speak a specific message by either referring a pregnant woman to an abortion provider or giving information about such providers. That's a content-based regulation. And it is viewpoint based given the pro-abortion message. So the State must (but cannot) satisfy strict scrutiny.

As it does with the Benefits-Discussion Requirement, the State argues that the Referral Requirement regulates only conduct that incidentally burdens speech. That too is wrong. Referring a patient to another provider is speech. There is no

separately identifiable conduct. The same goes for providing information about abortion providers. Just as in *NIFLA*, the Referral Requirement regulates speech as speech. Under that case, both requirements are unconstitutional.

That is far from their only constitutional problem. Both requirements also violate the Free Exercise Clause. Neither is neutral and generally applicable. So strict scrutiny applies twice over—a high bar that the State cannot clear.

That leaves just the State's argument that facial relief is improper. And that's a nonstarter. Facial relief is warranted because the requirements are unconstitutional in the majority of their applications. Anytime a provider with a conscientious objection is subject to the Benefits-Discussion Requirement, the provider must discuss the benefits of a procedure. Whether that procedure is abortion or something else, the requirement draws content-based lines in regulating speech as speech.

Likewise for the Referral Requirement. At least two out of three options (a majority) under that requirement are always unconstitutional. Anytime a provider must refer or provide information, there is a content-based regulation of speech as speech. Facial relief is warranted.

## ARGUMENT

Government may not condition a public benefit on the violation of a constitutional right. *See, e.g.*, *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013) (speech); *Mahmoud v. Taylor*, 606 U.S. 522, 561 (2025) (free exercise). The State does not challenge that doctrine. *See* State Br. 18. Nor does it challenge that it conditioned a public benefit—conscience protections—on

complying with the Benefits-Discussion and Referral Requirements. *See* 745 Ill. Comp. Stat. 70/6.1. So the only questions are whether those requirements violate the First Amendment and whether facial relief is warranted.

## I. The Benefits-Discussion Requirement triggers strict scrutiny under the Free Speech Clause.

Since the district court properly found the Benefits-Discussion Requirement unconstitutional, the Pregnancy Centers have yet to address it. The same free-speech principles apply in the professional medical context as in other contexts. *See NIFLA*, 585 U.S. at 773. The district court thus correctly held that the Benefits-Discussion Requirement: (1) implicates speech, RSA-17; (2) is content and viewpoint based because it makes the Pregnancy Centers "deliver[] a particular message," RSA-17–18; (3) is not connected to a medical procedure the Pregnancy Centers provide, RSA-31; and (4) fails strict scrutiny, RSA-41–42.

*NIFLA* is the key case. There, the Supreme Court held that forcing pregnancy centers to convey a government "notice" was unconstitutional. *NIFLA*, 585 U.S. at 763. "By compelling individuals to speak a particular message, such notices alter the content of their speech." *Id.* at 766 (citation modified). And the requirement triggered heightened scrutiny because it was "not tied to a procedure" or other conduct. *Id.* at 770.[1] That exact analysis applies here.

---

[1] *NIFLA* left open the possibility that intermediate scrutiny might apply in the professional-speech context for some unidentified "persuasive reason" that would justify treating such speech "as a unique category." *Id.* at 773. But the State doesn't even try to offer such a persuasive reason. So if the requirements are content-based regulations of speech (and they are), strict scrutiny applies.

**A.    The Benefits-Discussion Requirement regulates speech.**

The State asserts that the Benefits-Discussion Requirement regulates "professional conduct." State Br. 31. Not so. The Benefits-Discussion Requirement regulates speech as speech. *NIFLA*, 585 U.S. at 770. It requires providers to speak—and nothing more. *See* 745 Ill. Comp. Stat. 70/6.1(1). It does not regulate some "separately identifiable conduct" apart from speech. *See Cohen v. California*, 403 U.S. 15, 18 (1971) ("The only 'conduct' which the State sought to punish is the fact of communication. Thus, we deal here with a conviction resting solely upon 'speech' . . . ."). If the "only conduct" which the State seeks to compel is "communication," the statute regulates speech, not conduct. *Otto v. City of Boca Raton*, 981 F.3d 854, 866 (11th Cir. 2020) (citation modified). The State's attempt to "classify some communications as . . . 'conduct' is to engage in nothing more than a 'labeling game.'" *King v. Governor of N.J.*, 767 F.3d 216, 228 (3d Cir. 2014) (citation omitted). "Simply put, speech is speech, and it must be analyzed as such for purposes of the First Amendment." *Id.* at 228–29.

**B.    The Benefits-Discussion Requirement is content and viewpoint based.**

A facially content-based regulation "targets speech based on its communicative content." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (citation modified). Compelled speech requiring specific information necessarily does that. *R J Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 876 (5th Cir. 2024) ("[G]overnment-compelled speech inherently regulates speech on the basis of its content."); *Pharm. Rsch. & Mfrs. of Am. v. Stolfi*, 153 F.4th 795, 810

(9th Cir. 2025) (explaining disclosure requirements compelling a particular message are content based unless regulating commercial speech). Indeed, that follows from *NIFLA* and common sense.

The Court in *NIFLA* was clear: "compelling individuals to speak a particular message" alters "the content of their speech." 585 U.S. at 766 (citation modified). When the government compels particular speech, it regulates based on content. Full stop. *See Am. Beverage Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 759 (9th Cir. 2019) (Ikuta, J., concurring in part) ("*NIFLA* established . . . that government-compelled speech is a content-based regulation of speech."). In *NIFLA*, for example, the law required pro-life pregnancy centers "to inform women how they can obtain state-subsidized abortions." 585 U.S. at 766. The content of their speech was necessarily altered when they were required to speak a particular message. And it was egregiously so because that message supported the "very practice" they were "devoted to opposing." *Id.*

So the analysis here is simple. The Benefits-Discussion Requirement makes the Pregnancy Centers speak a particular message. They must tell a patient of "legal treatment options" and discuss their "risks and benefits." 745 Ill. Comp. Stat. 70/6.1(1). That means the requirement is content based. And just like in *NIFLA*, that alteration is egregious. The Pregnancy Centers must tell a pregnant woman about elective abortion and discuss its supposed benefits, despite their objection to that message. SA-3; RSA-10. They are forced to inform women of and convey support for the "very practice" they "are devoted to opposing." *NIFLA*, 585 U.S. at 766. That is a content-based compulsion of speech.

It is also viewpoint based. While *NIFLA* did not reach that question, it registered "serious concerns" that the disclosure requirements there were viewpoint discriminatory. *Id.* at 765 n.2. And four justices thought the "apparent viewpoint discrimination" was "inherent in the design and structure" of the law. *Id.* at 779 (Kennedy, J., concurring). There, California required "primarily pro-life pregnancy centers to promote the State's own preferred message advertising abortions." *Id.* So too here. The Pregnancy Centers must discuss the purported "benefits" of abortion. 745 Ill. Comp. Stat. 70/6.1(1). That discriminates based on viewpoint.

## C.  The State fails to show that the Benefit-Discussion Requirement is content neutral.

Nothing the State says changes the fact that the Benefit-Discussion Requirement is content and viewpoint based. For starters, the State never addresses *NIFLA*'s holding that laws compelling a particular message are necessarily content based. Nor does the State show how logically it could be otherwise. Instead, the State presents a hodgepodge of scattered arguments. None hit the mark.

First, the State says that the Benefits-Discussion Requirement applies regardless of an entity's belief or viewpoint. State Br. 40–42. But that does not make the requirement content neutral. A covered entity must still speak the specific content required. A Pregnancy Center must still discuss abortion and its alleged benefits. Besides, the requirement does not apply to everyone. Only entities with a conscientious objection to abortion must extol its supposed benefits.

Second, the State claims the requirement does not single out any topic. State Br. 40. But that's just wrong. By requiring speech with a particular message—a presentation of legal treatment options and their purported benefits—the Benefits-Discussion requirement does just that.

Third, the State says that the requirement's purpose is unrelated to content. *Id.* That's beside the point. "A law can regulate the content of protected speech, and thereby trigger strict scrutiny, either 'on its face' or in its justification." *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 482 (2025) (citation omitted). The Benefits-Discussion Requirement is facially content based. So there is no need to get into its justification.

Fourth, the State argues that the district court wrongly suggested that the requirement "targets 'pregnancy and abortion.'" State Br. 41 (quoting RSA-17). But the district court did not say that. It said that the Benefits-Discussion Requirement "governs a health care provider's discussion of pregnancy and abortion." RSA-17. That is surely correct. When seeing a pregnant woman, the Pregnancy Centers must discuss abortion and its purported benefits in many circumstances. It matters not that the requirement applies to other conscientious objections beyond pregnancy and abortion.

Fifth, the State claims that the Benefits-Discussion Requirement does not require the Pregnancy Centers to deliver a particular message but only to provide "an individualized discussion" consistent with standards of care. State Br. 41. Wrong again. By its terms, the requirement says that a provider must discuss available treatment options, including their benefits. 745 Ill. Comp. Stat. 70/6.1(1).

The requirement compels speech with a particular message. In fact, the State admits that providers may have to discuss the benefits of abortion "in some circumstances." State Br. 41. That is content based. It makes no difference whether the compelled speech is consistent with standards of care.

Sixth, the State's smorgasbord of citations doesn't help its cause. Perhaps its favorite case is *McCullen v. Coakley*, 573 U.S. 464 (2014). *McCullen* held that a facially content-neutral law did not transform into a content-based one by incidentally burdening some messages more than others. *Id.* at 480. But the law here could not be more different. It requires specific content on its face. The State cannot get around that.[2]

### D. The Benefits-Discussion Requirement regulates speech as speech, not speech incidental to conduct.

Since the Benefits-Discussion Requirement is content based, strict scrutiny applies. The State attempts to avoid that fate by arguing that the requirement affects speech only incidentally to regulating conduct. Not so.

For a law to regulate conduct that incidentally affects speech, there must—at a minimum—be some "separately identifiable conduct" apart from the speech that the law regulates. *Cohen*, 403 U.S. at 18. Three cases show that principle in action.

---

[2] So too for the other cases the State relies on. *See* State Br. 37–39 (citing *Nicodemus v. City of South Bend*, 137 F.4th 654 (7th Cir. 2025); *Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303 (7th Cir. 2017); *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048 (7th Cir. 2004); *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640 (1981); *Ward v. Rock Against Racism*, 491 U.S. 781 (1989); *Knowlton v. City of Wauwatosa*, 119 F.4th 507 (7th Cir. 2024); *Tingley v. Ferguson*, 47 F.4th 1055 (9th Cir. 2022); *Brokamp v. James*, 66 F.4th 374 (2d Cir. 2023)). None suggest that compelling a specific message is not a content-based regulation.

First, of course, is *NIFLA*. There, the Court held that a notice requirement regulated speech directly—and not speech incidental to conduct—because it was "not tied to a procedure." *NIFLA*, 585 U.S. at 770. Even though the requirement applied "to all interactions between a covered facility and its clients," *id.*—and in that sense regulated the general practice of medicine—the requirement regulated speech as speech because there was no separately identifiable regulated conduct.

Second is *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992). There, the plurality upheld an informed-consent requirement. *Id.* at 883. As the Court recognized, "the physician's First Amendment rights not to speak [were] implicated." *Id.* at 884. But they were so only incidental to the State's regulation of a specific "medical procedure"—"an abortion." *Id.* at 881. The informed-consent provision only incidentally burdened speech because it regulated the "separately identifiable conduct" of an abortion. *Cohen*, 403 U.S. at 18.

The third case is *Doe v. Rokita*, 54 F.4th 518 (7th Cir. 2022). There, this Court considered a fetal-remains statute. To obtain informed consent, it required an abortion provider to inform patients how the facility would dispose of fetal remains. *See* Ind. Code § 16-34-2-1.1(a)(2). The requirement thus burdened speech incidental to regulating the conduct of performing an abortion. *Rokita*, 54 F.4th at 521. A state could "require medical professionals to provide information that facilitates patients' choices directly linked to procedures that have been or may be performed." *Id.*

In short, the instances where the Supreme Court and this Court have upheld content-based laws compelling speech on a particular topic under the speech-incidental-to-conduct exception have been informed-consent laws. *Casey*, 505 U.S. at

11

883; *Rokita*, 54 F.4th at 521. But the Benefits-Discussion Requirement is not an informed-consent law, and in fact, it is not tied to any procedure at all, as the district court held. RSA-40. It applies whenever there is a "patient" with a "condition." 745 Ill. Comp. Stat. 70/6.1(1). That means the Pregnancy Centers must discuss the "legal treatment options" and their benefits—they must discuss abortion and extol its purported benefits—simply because a woman is pregnant. *Id*. No medical procedure triggers the accompanying speech.

### E. The State cannot compel speech as part of regulating the general practice of medicine.

The State says the Benefit-Discussion Requirement regulates conduct because it broadly governs "interactions between health care providers and their patients and ensure[s] that those interactions comport with the medical standard of care." State Br. 19. As the State tells it, *Casey* teaches that there is no problem with burdening speech so long as doing so is "part of the practice of medicine." *Id*. at 26 (quoting *Casey*, 505 U.S. at 884). And it thinks *Rokita* permits compelled speech where the speech "facilitates a patient's choices about future medical treatments." State Br. at 19, 31 (citing *Rokita*, 54 F.4th at 521).

The State's arguments are really a pitch for "a separate category of [professional] speech." *Cf. NIFLA*, 585 U.S. at 767. The State would create a de facto First Amendment exception for medical professionals. But *NIFLA* expressly repudiated such an exception: "[s]peech is not unprotected merely because it is uttered by professionals"—even if they are medical professionals. *Id*. That the notice in *NIFLA* applied "to all interactions between a covered facility and its

clients" did not convert it into a regulation of conduct incidentally burdening speech. *Id.* at 770. Rather, because there was no "separately identifiable conduct" apart from speech, *Cohen*, 403 U.S. at 18, the notice regulated "speech as speech," *NIFLA*, 585 U.S. at 770.

The State's other arguments fare no better. First, it argues that more than just informed-consent provisions can be regulations of conduct incidentally burdening speech. State Br. 19. But the State points to no case outside the informed-consent context finding government compulsion of particular messages to impose a merely incidental burden on speech. Regardless, to invoke the speech-incidental-to-conduct exception, the State must be regulating *some conduct*. Here, it points to none.

Second, the State argues that the Benefits-Discussion Requirement regulates conduct because it "establishes 'professional malpractice' rules." *Id.* at 30–31 (quoting *NIFLA*, 585 U.S. at 769). But *NIFLA* never suggested that any regulation tangentially related to a malpractice tort regulates conduct, not speech. Tort laws delineating conduct that constitutes medical malpractice may incidentally burden speech precisely because they directly regulate specific conduct. Here, the State points to no such conduct.

Third, the State distinguishes *NIFLA* as involving a government-drafted script. State Br. 31–32. But First Amendment protections do not change based on whether a provider is forced to give a government-drafted script about abortion or to generally discuss abortion and its alleged benefits. *See Riley v. Nat'l Fed'n of the Blind N.C., Inc.*, 487 U.S. 781, 795–98 (1988) (applying strict scrutiny to statute

13

compelling fundraisers to disclose certain information, not a specific script). In both, the government is compelling speech apart from any conduct. And for many pro-life organizations, compulsion to inform women of abortion's purported benefits is a worse intrusion on their "freedom of mind," *Wooley v. Maynard*, 430 U.S. 705, 714 (1977), than telling women the government provides financial assistance for abortion, as in *NIFLA*.

Fourth, the State argues that the Benefits-Discussion Requirement is like the informed-consent requirement in *Casey*, which required providers to give information about "alternatives to abortion" like "childbirth, child support, and adoption." State Br. 30–33. But there is a key difference. In *Casey*, the requirement regulated specific conduct—performing an abortion. A provider was required to share information about alternatives as part of obtaining consent to perform that procedure. That informed-consent requirement didn't exist in isolation; it was tied to a specific medical procedure. *See NIFLA*, 585 U.S. at 770. Yet the State can point to no identifiable procedure that the Benefits-Discussion Requirement regulates.[3]

And fifth, the State claims that the Pregnancy Centers would not have to discuss abortion with every pregnant woman who visits. State Br. 35. But even if true, the Benefits-Discussion Requirement still coerces the Pregnancy Centers to discuss abortion's supposed benefits. *See Id.* at 41. And it does so where there is no

---

[3] Likewise, the speech of discussing abortion and its benefits is nothing like the conduct of "assessing a client's nutritional needs." State Br. 31 (quoting *Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1225 (11th Cir. 2022)).

separately regulated conduct. Just like in *NIFLA*, the Benefits-Discussion Requirement regulates speech as speech. Strict scrutiny applies.

## II. The Referral Requirement triggers strict scrutiny under the Free Speech Clause.

The Referral Requirement is also a content- and viewpoint-based regulation of speech that triggers strict scrutiny. *See* Opening Br. 14–25. Recall that there are three options under the Referral Requirement. If a patient requests a service that a provider deems objectionable, the provider must refer the patient, transfer the patient, or give written information about other providers that it thinks offer that service. 745 Ill. Comp. Stat. 70/6.1(3). For the Pregnancy Centers, transferring is not possible because they do not admit patients. *See* Opening Br. 6 n.1. That means they must either refer a patient to an abortion provider or give written information on other providers who perform abortions. Both options regulate speech on a content and viewpoint basis. The State's contrary arguments fail.

### A. The Referral Requirement regulates speech.

The State contends that the Referral Requirement regulates "non-expressive conduct" and does not even "implicate the First Amendment." State Br. 20. For that argument to be right, each of the Referral Requirement options must regulate conduct alone. That's simply not true.

First, the State claims that referring patients is "non-expressive conduct" and urges this Court to hold that neither spoken nor written referrals are speech. *Id.* at 20–21. But if "speaking to [patients] is not speech, the world is truly upside down." *Otto*, 981 F.3d at 866. Indeed, just like the disclosure at issue in *Bartnicki v.*

*Vopper*, 532 U.S. 514 (2001), and the counseling at issue in *Otto*, a referral "consists—entirely—of words." 981 F.3d at 865; *see Texas v. Johnson*, 491 U.S. 397, 404 (1989) (First Amendment protects "the spoken or written word"). The Referral Requirement thus "regulates speech as speech." *NIFLA*, 585 U.S. at 770.

The State argues otherwise by pointing to *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949) and *K.C. v. Individual Members of Medical Licensing Board of Indiana*, 121 F.4th 604 (7th Cir. 2024). State Br. 21–23. But those cases involved the First Amendment exception for speech integral to criminal conduct. They hold only that speech is unprotected when used as an integral part of separate conduct in violation of a valid criminal statute. *Giboney*, 336 U.S. at 498 (law prohibiting picketing); *K.C.*, 121 F.4th at 628 (law prohibiting aiding and abetting). So too for *Brandt ex rel. Brandt v. Griffin*, 147 F.4th 867 (8th Cir. 2025). *See* State Br. 20. That out-of-circuit case upheld a referral restriction "only as an incidental effect of prohibiting the [otherwise-unlawful] provision of gender transition procedures to minors"—unlawful conduct in Arkansas. *Brandt*, 147 F.4th at 889.

The State focuses on *K.C.* in particular to say that referrals are not speech. State Br. 22–23. But *K.C.* suggests that the referrals at issue were speech—just an unprotected genre. Opening Br. 45–46 (citing *K.C.*, 121 F.4th at 629). Further, the statute there prohibited aiding and abetting, *not* referrals directly. *Id.* at 628. That is why the Court said its "language does not address speech at all." *Id.* at 630; *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 (1992) (recognizing that the "unprotected features of the words are, despite their verbal character, essentially a 'nonspeech' element of communication"). In short, the Court neither said nor

implied that "referrals were not protected" because "they were 'action,' not speech." *Cf.* State Br. 23.

The referral option here looks nothing like what was at issue in the State's cases.[4] There is no separate conduct involved, much less unlawful conduct. The speech-integral-to-unlawful-conduct exception does not apply. Indeed, when referring a patient, a provider communicates in two ways: she (1) tells another provider that the patient needs care and (2) tells the patient she can seek care from the other provider. *See* SA-22.[5] The requirement is speech all the way down. And the only conduct remotely relevant is conduct perhaps performed by a *different* provider at a later date.

Second, the State claims that the providing-information-about-abortion option does not "express any message" about the treatment. State Br. 21. But the question is not whether speech expresses a message about the treatment itself. The question is whether it conveys a message *at all*. Just look at any speech case. *See, e.g.*, *Bartnicki*, 532 U.S. at 527 (publishing information constitutes speech); *Johnson*, 491 U.S. at 404 ("the spoken or written word" constitutes speech). Here, providing information about where to obtain an abortion conveys a message. That is speech.

---

[4] The State's reliance on expressive-conduct cases is also misplaced. *See* State Br. 20–21 (citing *Doe v. City of Lafayette*, 377 F.3d 757 (7th Cir. 2004); *Tagami v. City of Chicago*, 875 F.3d 375 (7th Cir. 2017); *The Bail Project, Inc. v. Comm'r, Ind. Dep't of Ins.*, 76 F.4th 569 (7th Cir. 2023)). A referral is not conduct that could express a message. It consists entirely of spoken or written words—that's speech.

[5] Contrary to the State's view, *Rust v. Sullivan*, 500 U.S. 173 (1991), in no way suggests otherwise. *See* State Br. 21. *Rust* presupposes that referrals are protected speech. Opening Br. 20.

**B.      The Referral Requirement is content and viewpoint based.**

Just like the Discussion-Based Requirement, the Referral Requirement compels Pregnancy Centers to convey a specific message. That means it is content based no less than the notice requirement in *NIFLA*. *See* 585 U.S. at 766; *e.g.*, *R J Reynolds*, 96 F.4th at 876 ("[G]overnment-compelled speech inherently regulates speech on the basis of its content.").

Under the Referral Requirement, Pregnancy Centers must either refer a patient to another provider or provide written information on other providers. Both options compel speech with specific information. *See* Opening Br. 14–15. So both are content based. And they are viewpoint based too. The Pregnancy Centers must promote "the State's own preferred message" that abortion is an acceptable and beneficial option for pregnant women. *NIFLA*, 585 U.S. at 779 (Kennedy, J., concurring).

The State cannot show otherwise. Again, the State fails to address *NIFLA*'s holding that laws compelling a specific message are necessarily content based. And its other arguments go nowhere. Most are the same as it raised about the Benefits-Discussion Requirement, which are addressed above. So consider just the new ones.

First, the State suggests that the Referral Requirement is content neutral because it applies only at a patient's request. State Br. 37. But that in no way changes the fact that the provider must respond with specific information. The impetus for the compelled speech does not make the requirement any less content based.

Second, the State argues that finding the Referral Requirement content based would call into question other health-and-welfare laws. *Id.* at 38. Not true. The Referral Requirement is content based because it compels speech with specific content. Other health-and-welfare laws that don't do that are not implicated. Besides, even for another law that does compel specific content, it could well be a regulation of conduct incidentally burdening speech—unlike here.

Third, the State argues that the Referral Requirement is not viewpoint based because providers who refer a patient to another provider performing abortions or provide a list of other providers that perform abortions "do not convey endorsement of the treatment itself." *Id.* at 38. But that goes against common sense—and expert testimony at trial. If a doctor refers a patient to another doctor to perform a procedure or gives a list of other doctors who perform that procedure, the implicit message is that the procedure is medically warranted and could be beneficial. *See* SA-437 (explaining that a referral indicates a doctor's belief that "some practice or procedure . . . should be provided to the patient"). Plus, it conveys an "implicit endorsement" of the other doctor. SA-22. So the message conveys a specific viewpoint. The Referral Requirement is both viewpoint and content based.

### C. The Referral Requirement regulates speech as speech, not speech incidental to conduct.

Since the Referral Requirement is content and viewpoint based, strict scrutiny applies. The State says it can avoid that result because the requirement only incidentally burdens speech while regulating conduct. It does not for three reasons.

First, neither the referral nor the providing-information option involves conduct apart from speech. Rather, a referral is comprised *entirely* of speech. And the same goes for providing information. To say that compelling such speech is merely incidental "is like saying that limitations on walking and running are merely incidental to ambulation." *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1308 (11th Cir. 2017) (en banc). In sum, there is no "separately identifiable conduct" apart from the speech, and the speech-incidental-to-conduct doctrine does not apply. *Cohen*, 403 U.S. at 18.

Second, the State claims that its regulation of the general practice of medicine transforms the Referral Requirement into speech incidental to conduct. State Br. 23. That argument is a recipe for a medical professional exception to the First Amendment. And it is one the Supreme Court expressly rejected in *NIFLA*. 585 U.S. at 767. Pointing to the general practice of medicine is not enough to make speech incidental to conduct. *Id.* Instead, the State must identify some separately identifiable conduct apart from speech. *Id.* at 766. Were the rule otherwise, *NIFLA* would have come out the other way. In fact, the State identifies no case outside the context of obtaining informed consent for a medical procedure where a law compelling speech on a certain topic has been held to be an incidental burden on speech.

Third, the State contends that the Referral Requirement facilitates a patient's choice even more than the Benefits-Discussion Requirement, because it only kicks in after a patient's request. State Br. 25. Yet that does not show

separately identifiable conduct. Even if the patient requests it, the Referral Requirement still directly compels speech wholly apart from conduct.

## III.    Both requirements fail strict and intermediate scrutiny.

Strict scrutiny applies to both requirements. And like the district court found for the Benefits-Discussion Requirement, neither can pass that high bar. *See* RSA-41. Nor can they satisfy intermediate scrutiny.

### A.    The State has not satisfied strict scrutiny.

Strict scrutiny is "the most demanding test known to constitutional law." *Free Speech Coal.*, 606 U.S. at 484 (citation omitted). That's because, in the speech context, it enforces "the fundamental principle that governments have no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Id.* at 484–85 (quoting *NIFLA*, 585 U.S. at 766). And strict scrutiny can succeed "in that purpose if and only if, as a practical matter, it is fatal in fact absent truly extraordinary circumstances." *Id.* at 485.

There are no such extraordinary circumstances here. The State must show that the requirements are narrowly tailored to serve compelling state interests. *Id.* at 484. That means the State "must specifically identify an 'actual problem' in need of solving" and show that "the curtailment of free speech" is "actually necessary to the solution." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011). And that problem must be borne out in the record. *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (instructing courts to examine "the whole record" (citation omitted)).

The State doesn't come close to showing all that. In fact, it hardly even tries, devoting just one paragraph to its strict-scrutiny analysis. *See* State Br. 52–53. At the outset, the State cannot show its requirements advance a compelling interest that addresses an actual problem. The only alleged compelling interest it puts forward is "ensuring that patients have access to medical treatments." *Id*. But whether that interest qualifies as compelling in the abstract is not enough. The interest must address an actual problem. So there must be record evidence of patients *not* having access to medical treatments. Yet the district court found that the State failed "to affirmatively produce evidence at trial" showing any such problem. RSA-41–42. And the State offers no such evidence now when arguing that strict scrutiny is satisfied.[6] *See* State Br. 53.

It merely claims that sometimes an "abortion may be needed to save a patient's life." *Id*. But such situations are unlikely to involve conscience objections because treatment necessary to save a woman's life is not considered an abortion by pro-life doctors. *See, e.g.,* SA-16 (inducing labor to protect the life of the mother before viability not an abortion), 31–32, 302 (treating ectopic pregnancy or life-threatening cancer not an abortion even if the unborn child does not survive). Regardless, providers are ineligible for the statutory conscientious protections in emergency situations. *See* 745 Ill. Comp. Stat. 70/6. The State cannot back up the only supposedly compelling interest it offers.

---

[6] The two examples the State offers in its intermediate-scrutiny argument of patients allegedly lacking access to medical treatment don't come close, as discussed below.

Even if the State could establish a compelling interest (it cannot), the Requirements are not narrowly tailored. "The First Amendment does not permit the State to sacrifice speech for efficiency." *NIFLA*, 585 U.S. at 775 (citation omitted). *NIFLA* again controls. *See id.* A publicity campaign informing the public about common medical procedures to which providers may have conscientious objections would advance the State's alleged compelling interest without burdening private speech. *See id.*

The State has no direct response. It merely references its intermediate-scrutiny argument, which claims that the alternative would be too burdensome. *See* State Br. 53. But it makes no difference under strict scrutiny if an alternative is burdensome. If any less "restrictive means" of furthering the compelling interest is available, then strict scrutiny isn't satisfied. *Free Speech Coal.*, 606 U.S. at 471 (citation omitted). And here, the Benefits-Discussion and Referral Requirements are not the least restrictive means. So both requirements fail strict scrutiny.

## B.     The State has not satisfied intermediate scrutiny.

The State cannot satisfy intermediate scrutiny either. The only real chance for that standard to apply is if the requirements regulate conduct while incidentally affecting speech outside the informed-consent context. And contrary to what the State says, *see* State Br. 35, if the requirements fall into that category, they still must pass intermediate scrutiny.[7] That means they must "further an important

---

[7] The State argues that neither *Casey* nor *Rokita* applied intermediate scrutiny. But this case does not involve an informed-consent provision and precedent is clear that intermediate scrutiny applies to regulations of conduct that incidentally affect

Government interest unrelated to the suppression of free expression" and "not burden substantially more speech than necessary to further that interest." *TikTok Inc. v. Garland*, 604 U.S. 56, 73–74 (2025) (per curiam). And the important interest must be "well-grounded." *Id.* at 74. That is, there must at least be a "reasonable inference based on substantial evidence" that there is a problem in need of addressing. *Id.* at 75 (citation modified).

The State comes up short on both the interest and tailoring prongs. For the important interest justifying the Benefits-Discussion Requirement, the State puts forward "ensuring that patients have information about treatment options and the risks and benefits of those options." State Br. 47. And for the Referral Requirement: ensuring that providers with conscientious objections do not impair patient health. *Id.* at 42. But the State does not show that legislators made a reasonable inference based on substantial evidence that patients lacked such information or that their health was impaired by conscientious objections.

First, the State offers two alleged examples of patients lacking access to medical treatment. It says that a religious hospital declined to perform an abortion on a pregnant woman who was likely to miscarry and that a doctor declined to provide anesthesia for an elective abortion. *Id.* at 43. Neither example substantiates the State's alleged interest.

The woman who testified about the religious hospital made clear she was aware of another provider who would perform the abortion—only her insurance

---

speech. *See Free Speech Coal.*, 606 U.S. at 495; *Richwine v. Matuszak*, 148 F.4th 942, 954 (7th Cir. 2025).

would not cover it. Exhibit 26 to Def.'s Post-Trial Mem. of Law at 14, No. 3:16-cv-50310, Dkt. No. 275-29. So the religious hospital's conscientious objection did not cause a lack of access. Her insurance coverage did. That situation shows a different problem—one that the Referral Requirement would not solve. And the doctor-not-providing-anesthesia example says nothing about whether the women found another anesthesia provider. The two anecdotes do not support the State's allegedly important interest of patients lacking access to medical information. *See, e.g.*, *Wollschlaeger*, 848 F.3d at 1312 (rejecting "six anecdotes" as substantiating a state's interest under heightened scrutiny).[8]

Nor do those examples show substantial evidence of conscientious objections impairing patient health. Neither shows that any patient's health was jeopardized. Indeed, for the woman lacking insurance coverage, the religious hospital ended up inducing birth when the woman's condition warranted it. Exhibit 26 to Def.'s Post-Trial Mem. of Law at 16, No. 3:16-cv-50310, Dkt. No. 275-29. And the State offers no other examples of conscientious objections allegedly impairing patient health. For good reason: the conscience protections do not apply in emergency situations.

Second, the State says bill sponsors "learned that pregnant women being treated at religious hospitals lacked information about their options when they were having miscarriages or pregnancy complications." State Br. 47. But neither the trial exhibit nor the House Proceeding Transcript that the State cites shows that women

---

[8] In the same vein, these two anecdotes are nothing like the extensive record evidence introduced in the State's cited cases. *See* State Br. 43 n.7 (citing *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986)).

lacked information. Both reference the same instance of the woman who did not receive an abortion at a religious hospital. *See* Exhibit 21 to Def.'s Post-Trial Mem. of Law at 3, No. 3:16-cv-50310, Dkt. No. 275-24; Ill. H. Procs., 99th Gen. Assemb., at 57, 83 (May 25, 2016), perma.cc/5FW2-TU9D. But as discussed, her inability to get an abortion was not from a lack of information; it was because of her insurance coverage.

Third, the State offers legislative testimony from the chair of the Illinois section of the ACOG. *See* State Br. 48. But that testimony contains no specifics whatsoever. It falls far short of establishing the "substantial evidence" of a problem necessary to make the State's interest "well-grounded." *TikTok*, 604 U.S. at 74–75.

Fourth, the State claims that patients' access to abortion providers is hindered because the Pregnancy Centers may be the top results on internet searches. State Br. 44. And it argues that many of those patients are "minors, homeless, illiterate, abused, or [of] limited financial means." *Id.* Even if true, neither point shows that women lacked knowledge about abortion providers or that some women could not find an abortion provider. In fact, trial testimony demonstrated just the opposite: Illinois women know where to obtain abortions. *See* SA-19–20, 56, 80–81, 112–13, 133, 160 (witness testimony). And the State put on no evidence showing otherwise. In short, the State cannot show an important interest justifying either requirement.

Likewise, the State cannot satisfy the tailoring prong. That's because the requirements burden substantially more speech than necessary. Again, *NIFLA*'s example of a publicity campaign establishes that. *See* 585 U.S. at 775. The State

contends such a campaign would be too burdensome because providers might have conscientious objections to procedures beyond abortion. State Br. 52. But a publicity campaign informing the public about multiple common medical procedures to which providers may have conscientious objections is hardly more burdensome than an abortion-specific campaign. The only difference is providing more information in whatever notices the State issues.

A publicity campaign would work especially well for the Referral Requirement. That requirement kicks in only upon a patient's request, which means the patient must be aware of the desired service. So all the publicity campaign would have to do is list providers who perform procedures that are often subject to a conscientious objection.[9] Just as in *NIFLA*, the State has not shown that "an advertising campaign is not a sufficient alternative." 585 U.S. at 775. The State cannot satisfy even intermediate scrutiny.

## IV. Both requirements also violate the Free Exercise Clause.

Strict scrutiny applies for another reason too: neither requirement is neutral or generally applicable. *See Fulton v. City of Phila.*, 593 U.S. 522, 533 (2021). Both requirements apply only to conscientious objectors. That means only religious providers are forced to discuss the benefits of abortion and refer patients to other providers offering elective abortions. The requirements thus single out religious

---

[9] Because of the publicity-campaign alternative, the State's reliance on the Referral Requirement applying only upon a patient's request backfires, and none of the cases the State cites discussing targeted statutes help it. *See* State Br. 45 (citing *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803 (2000); *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225 (4th Cir. 1989); *Grayned v. City of Rockford*, 408 U.S. 104 (1972); *MacDonald v. City of Chicago*, 243 F.3d 1021 (7th Cir. 2001)).

providers. The State claims singling out religious objectors is no problem because it only does so in the context of granting conscience protections. State Br. 54. But the problem remains: religious providers with an objection are coerced to discuss abortion and its alleged benefits and refer or provide information on abortion providers. Secular providers with an objection need not do the same. That means strict scrutiny applies. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022). And the State cannot satisfy that high bar, as discussed above.[10]

## V. Both requirements' constitutional violations warrant facial relief.

Finally, the State argues that the district court should have granted only as-applied relief. State Br. 59. That argument is a nonstarter. Facial relief is warranted in the First Amendment context if "a law's unconstitutional applications are substantial compared to its constitutional ones." *Moody v. NetChoice, LLC*, 603 U.S. 707, 718 (2024). And that is true here—for both requirements.

Whenever the Benefits-Discussion Requirement applies, it unconstitutionally compels speech. If a provider has a conscientious objection to abortion and must discuss that as a legal treatment option along with its alleged benefits, the requirement is unconstitutional. Similarly, if a provider has a conscientious

---

[10] The State failed to establish that the standard of care always requires secular providers to refer for or discuss the benefits of abortion. *See* RSA-55 n.27. The requirements are thus under-inclusive; they do not solve the alleged problem for secular providers who refuse to refer for or promote abortion and aren't required to do so. *See Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 120 (1991) (equating a law's effect with the government's interest a "circular defense" that would "sidestep judicial review of almost any statute because it makes all statutes look narrowly tailored").

objection to a different procedure and must discuss that procedure and its supposed benefits, the requirement is unconstitutional.

Likewise, whenever the Referral Requirement applies, coercing a provider to refer to another provider or give information about other providers unconstitutionally compels speech. The transfer option does not change that. Because two of the three options are unconstitutional, the law's unconstitutional applications are substantial compared to any constitutional ones. Facial relief is warranted for both requirements.

\*     \*     \*

At nearly every step, *NIFLA* resolves this case. The State cannot compel the Pregnancy Centers to speak a message that they disagree with. It cannot coerce them to speak in support of abortion—"the very practice" they "are devoted to opposing." *NIFLA*, 585 U.S. at 766. Both the Benefits-Discussion and the Referral Requirements do exactly that. And just like the speech requirement in *NIFLA*, the requirements here are direct regulations of speech. There is no conduct regulated apart from speech. So both requirements are unconstitutional.

## CONCLUSION

The Court should reverse the district court's decision as to the Referral Requirement and affirm as to the Benefits-Discussion Requirement.

Dated: December 19, 2025

Respectfully submitted,

s/ *Patrick T. Gillen*

s/ *Erin M. Hawley*

Patrick T. Gillen
Thomas G. Olp
THOMAS MORE SOCIETY
309 W. Washington, Suite 1250
Chicago, IL 60606
(312) 782-1680
pgillen@thomasmoresociety.org
tolp@thomasmoresociety.org

Erin M. Hawley
John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
ehawley@ADFlegal.org
jbursch@ADFlegal.org

*Counsel for Appellant-Cross-Appellee*
*Ronald L. Schroeder,*
*et al.*

James A. Campbell
Erik C. Baptist
Daniel J. Grabowski
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
jcampbell@ADFlegal.org
ebaptist@ADFlegal.org
dgrabowski@ADFlegal.org

Kevin H. Theriot
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
ktheriot@ADFlegal.org

*Counsel for Appellants-Cross-Appellees*
*National Institute of Family & Life Ad-*
*vocates, et al.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Circuit Rule 28.1 and 32(c) because this brief contains 7,616 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: December 19, 2025

s/Erin M. Hawley
Erin M. Hawley
*Counsel for Appellants-Cross-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

*s/ Erin M. Hawley*
Erin M. Hawley
*Counsel for Appellants-Cross-Appellees*